Charles Arthur Ledferd, Appellee, v. Eugene Reardon, Appellant.

Gen. No. 9,170.

Heard in this court at the January term, 1939. Opinion filed January 15, 1940.

CARL E. ROBINSON, of Jacksonville, for appellant.

JAMES M. BARNES, of Jacksonville, and L. ALLAN WATT, of Winchester, for appellee.

Mr. Justice Hayes delivered the opinion of the court.

This is an appeal from an order of the circuit court of Scott county, granting a new trial, in an action brought by Charles A. Ledferd, plaintiff appellee, hereinafter called plaintiff, against Eugene Reardon, defendant appellant, hereinafter called defendant, to recover damages for personal injury sustained by plaintiff when he was struck by an automobile driven by defendant, in the village of Manchester, on the evening of December 22, 1936.

The declaration charges defendant with general negligence in the operation of his car; also wilful and wanton negligence; also specific negligence in operating an automobile at a speed greater than was reasonable and proper having regard to the traffic and use of the way, and so as not to endanger the life or limb of any person; also in operating his automobile across the center line of a public highway and upon the left side thereof; also in failing to keep to the right in making a left turn at an intersection; also in failing to give a signal on turning from a direct course upon a highway; also in operating his automobile with the intent to make a left turn without due caution in regard to traffic, and in not waiting until he could make such left turn with safety.

The jury found the defendant not guilty. A motion for a new trial was made by the plaintiff and granted by the trial court.

The plaintiff lived at Jacksonville, Illinois, and at the time of the injury was 20 years of age. For some time prior to the date of his injury he had been attending the C. C. C. camp at Jerseyville, Illinois. On December 22, 1936, he was granted a vacation of five days and made arrangements to spend Christmas at his home in Jacksonville. Prior to leaving the camp, he had written his mother to have his brother meet him in Roodhouse or Manchester. He got a ride, with

the father of one of the other boys, to Manchester; stopped there and went into the Bandy restaurant. Plaintiff testified that he got a sandwich there, and listened to the Amos and Andy program, which he said was from 6 o'clock p. m., to 6:15 o'clock p. m. He then left the restaurant, carrying a suitcase, and placed the suitcase on the first step, on the east side of the cross walk at the northeast corner of the intersection of the hard road (Main street) with Fifth street. This cross walk is along the north side of Fifth street,— which runs east and west,—and leads to the concrete slab on Main street. U. S. route sixty-seven (67), runs through the village of Manchester, on Main street. Bandy's restaurant is at the southwest corner of the intersection in question. Fifth street, going east from this intersection, is 68 feet wide, and the whole surface of it is graveled. On the south side of Fifth street, and the east side of Main street, is a park known as the Public Square. On the north side of Fifth street the first block, going east from Main street, is solidly built up with store buildings and business places with a narrow sidewalk adjacent to the stores, which sidewalk is higher than the elevation of either Fifth street or Main street, necessitating two steps where the sidewalk crosses Main street at the northeast corner of the intersection. There is an electric street light at the corner of this intersection which the proofs show was burning at the time of the accident. Plaintiff testifies that he was standing on the sidewalk, and after a short time a girl came along the sidewalk and he was in the way, so he stepped three or four steps west on the cross walk, and put his suitcase down and waited there for his brother. He fixes this spot as being 15 feet from the east edge of the concrete slab on route sixty-seven (67). He further stated that a car driven by Mr. Taylor was coming from the south, and at the same time a car was coming from the north, driven by the defendant; that ''suddenly the defendant swerved his

car off in front of the Taylor car and struck me so quickly that it was impossible to get out of the way."

The record discloses that it was then between 6:30 or 7 o'clock in the evening. It was dark. In addition to the street light, which was overhead at this corner, there were lights in the stores all along the block.

There is a sharp conflict in the testimony of plaintiff and defendant as to where the plaintiff was standing at the time he was struck by the automobile of the defendant. The defendant, and the man who was riding with him at the time of the accident, testified that plaintiff was struck,—not while on the sidewalk, but about 10 or 15 feet south of the sidewalk on the gravel road, and about four feet east of the pavement at the intersection of the two roads.

The weight of the evidence shows that defendant's car stopped with the front end at about the center line of Fifth street, headed in a southeasterly direction. The plaintiff was about five feet ahead and a little to the right of the automobile. The suitcase was a little further away. The defendant Reardon testified that at this time a car was coming from the south; that the lights blinded him somewhat; that he didn't stop on the hard road as he had plenty of time to turn left at the intersection; that it was getting close to Christmas and he wanted to see if the stores were open, so he turned at the intersection; that he didn't see plaintiff until almost the instant when he turned the corner; that he was running in high gear, and that his car traveled about 15 feet after he struck the plaintiff. On cross-examination, defendant was asked if the lights on the car from the south didn't blind him, and if he didn't pull to the left? In answer to this question, he answered 'a little.' He then added he was far enough down the road to get out of his way; that he didn't want to stop on the road, and that he had plenty of time. Assuming that plaintiff was standing 10 feet, or even 15 feet south of the sidewalk, which is the

position McCracken and defendant respectively place him, he would be in a position so as not to be struck, had the defendant observed the law in regard to keeping to the right on a left turn at an intersection. Therefore the defendant was guilty of negligence and violation of the traffic laws under his own testimony. There can be little question in the record, as to the negligence of defendant. It also appears from the record that defendant suddenly left the slab and turned left, when he was blinded by a car from the other direction. Defendant turned into the left-hand side of Fifth street, in front of the main business section of the town, and at a point where there was liable to be pedestrian or vehicular travel. He either didn't or couldn't see, and was traveling at a rate of speed that was in excess of due caution under the surrounding circumstances.

The remaining question in the case is that of contributory negligence of the plaintiff. This is a difficult one. It is true plaintiff had a right to use that place in the street so long as he used due care and precaution for his own safety in keeping with the danger that surrounded him. He was looking for his brother, who apparently was coming from Jacksonville. From the testimony of the plaintiff it would appear that there was uncertainty as to whether his brother would meet him at Roodhouse or Manchester. Plaintiff's testimony shows that he made some remarks indicating that the brother might be in Roodhouse at the same time plaintiff was there. It further appears from the record that plaintiff went on to Manchester, and stopped in Bandy's restaurant, which is on the west side of Main street in Manchester. If his brother were coming from Jacksonville, the west side of the street would be the natural side for him to wait on, as Jacksonville is north of Manchester on route 67, while Roodhouse is south of Manchester. In place of that, he crosses over and waits on the east side of the highway, which would look as if he had expected his

brother to have gone to Roodhouse and was coming back north on the east side of the road. The record is not clear on this. At that time in the evening it was natural for plaintiff to stand out where his brother passing on the highway would see him.

Plaintiff had a right to use any part of the street in question he chose, so long as he exercised due care for his own safety. Greater care is required where a person is using the street at a point away from the cross walk than at the cross walk. *Morrison v. Flowers*, 308 Ill. 189.

We are unable to hold that the jury was right in finding the plaintiff guilty of contributory negligence, nor that the trial judge was wrong in setting the verdict aside and granting a new trial. It is true under this record, that plaintiff did not foresee the fact that defendant would suddenly turn off the hard road and make a short left-hand turn at this intersection without giving a signal, and at such rate of speed that plaintiff did not have time to move from the path of the automobile. The defendant at that moment, was blinded by the lights of a car coming from an opposite direction, which caused him to swerve to the left. These circumstances would justify any court or jury to hesitate before making a finding of contributory negligence that would bar recovery, particularly in a case where the negligence of the defendant is clear and the damage and injury are of a serious nature.

We are unable to say, as a matter of law, that the trial judge abused the discretion vested in him, in allowing the motion for a new trial. He heard the witnesses; had the benefit of first-hand information of all the facts and circumstances of the trial, and he saw the demeanor of the plaintiff and that of the defendant. It does occur to us however, that the defendant lived close to the village of Manchester and traded there. Manchester is in the county of Scott,—the same county this case was tried in. As far as the record discloses,

plaintiff was a stranger in the locality, and merely a passing traveler on his way from the C. C. C. camp to his home at Jacksonville. These circumstances and incidents could better be passed on by the trial judge than by a court of review. Plaintiff sustained a severe injury, and was incapacitated for a long period of time.

The law is well established that motions for new trials are addressed to the sound judgment of the trial judge and his actions therein will not be reversed except in case of a clear abuse, which must be affirmatively shown. It is further the rule that reviewing courts are more reluctant to interfere with granting of a new trial than the refusal to set aside a verdict. This rule is based upon the theory that the judge who tries the case, having the parties, their witnesses and counsel before him, has an opportunity to observe their demeanor and conduct during the trial. He can note all incidents occurring during its progress which are likely to affect the result thereof, and he is better qualified to judge whether a fair trial has been held and substantial justice done, than an appellate tribunal.

In *Couch v. Southern Ry. Co.*, 294 Ill. App. 490, the court said:

"Previous to the enactment of the Civil Practice Act and section 77 thereof, the award of a new trial was not a final order and hence not reviewable. By the act it was designated as one from which an appeal might be allowed by the reviewing court upon a proper showing. We find that such rulings as have been made by our courts upon the proposition since such act became operative, have been founded upon the general trend of current authority as evidenced by the foregoing quoted decisions, and as stated in *Tone v. Halsey, Stuart & Co., Inc.*, 286 Ill. App. 169, wherein the court, in construing said section 77, said: 'many decisions of courts where similar statutes have been enacted are cited to the effect that only where the trial

court has abused its discretion or proceeded upon some clear or manifest misapprehension of a supposed controlling rule of law, will an order for a new trial be reversed. Even in such cases, decisions indicate that courts are reluctant to reverse, and their power to do so is seldom exercised.' This case is quoted approvingly in *Wagner v. Chicago Motor Coach Co.*, 288 Ill. App. 402.''

It is the law that the trial judge is allowed broad judgment in the granting of new trials and that his action in so doing will only be reversed where it affirmatively appears that he has clearly and palpably abused his discretion in that regard. Under this record, we are unable to hold that the trial court was guilty of such abuse of his discretion, therefore his order is hereby affirmed.

*Order affirmed.*