James P. Hall, Plaintiff-Respondent, v. Chicago and North Western Railway Company, Defendant-Petitioner.

Gen. No. 45,920.

Opinion filed February 2, 1953. Released for publication February 20, 1953.

LOWELL HASTINGS, DRENNAN J. SLATER, and EDWARD WARDEN, all of Chicago, for petitioner.

JAMES A. DOOLEY, of Chicago, for respondent.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

The plaintiff, James P. Hall, brought suit under the Federal Employers' Liability Act (45 U. S. C. A. 51–60) to recover damages for personal injuries sustained while he was employed as a brakeman by the defendant, Chicago and North Western Railway Company, a common carrier engaged in interstate commerce. The suit contained two causes of action. Under count 1 plaintiff sought to recover damages for injuries sustained on January 21, 1947; that count was dismissed before the conclusion of the trial on plaintiff's motion and is not involved in this petition for leave to appeal. Under the second count he sought to recover $90,000 as damages for injuries sustained in a switching operation on August 11, 1947 at the Nachman Company premises in Chicago. In the course of the trial an amended complaint was filed, over defendant's objection, for the sole purpose of increasing the *ad damnum* to $285,000. Defendant's answer, which was allowed to stand as the answer to the amended complaint, de-

nied the charges of negligence and alleged that plaintiff's contributory negligence was the sole proximate cause of the accident. Trial by jury resulted in a verdict in favor of plaintiff for $50,000. Thereafter the court allowed plaintiff's motion for a new trial, which is the basis for the petition filed here for leave to appeal from that order, in accordance with section 77 of the Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, par. 201; Jones Ill. Stats. Ann. 104.077].

In his final address to the jury defendant's counsel made the following argument: "I say again if you believe that the opposition here has proved by a preponderance of evidence that the defendant is guilty of negligence which caused these injuries, then you are going to have to award him a verdict, and whatever amount he receives by way of a verdict in this case is not subject to Federal income tax." This provoked the following exchange of comments:

"Mr. Dooley [counsel for plaintiff]: I object to that.

"The Court: That may be stricken.

"Mr. Warden [counsel for defendant]: That is the law, your Honor.

"The Court: That may be stricken.

"Mr. Dooley: Let the jury be instructed to disregard it.

"The Court: They are so instructed.

"Mr. Warden: Well, under the Court's ruling, ladies and gentlemen, simply disregard what I have said to you about taxes."

Subsequently, on the hearing of plaintiff's motion for a new trial, the court informed the respective counsel that he wanted "both sides to * * * prepare a memorandum in regard to this statement made to the jury. That is the only part of the case I am interested in. So far as the rest of it is concerned, I think both sides had a very fair trial. I am only interested in this one particular phase." Pursuant to this

request, extensive briefs were submitted on behalf of the parties, and thereafter, in ruling on plaintiff's motion, the court stressed that ''it is not the intent of this court to comment or say anything in derogation of the conduct of defendant's counsel as this court feels that he tried this matter as a gentleman. This court feels in persisting in his remarks, making remarks in regard to the deductions in reference to normal income tax returns, was prejudicial error and therefore this court feels that it is his duty to grant a motion for new trial in this matter. That is all.'' It thus appears that the only ground or reason for the granting of a new trial was counsel's remark to the jury that the amount plaintiff received by way of a verdict was not subject to federal income tax. The trial judge was satisfied with the finding of the jury on all other issues. A similar situation arose in *Kavanaugh v. Washburn,* 320 Ill. App. 250. There the jury returned a verdict of not guilty, and the plaintiff filed a motion for a new trial which was granted. The reasons assigned in writing by the trial judge were based entirely upon instructions given on behalf of the defendant. The reviewing court pertinently observed that ''since the reasons assigned by the trial court for the granting of the motion for new trial deal entirely with instructions, it is assumed the trial court was satisfied with the finding of the jury on questions of fact,'' and thereupon considered and decided the appeal solely on the instructions objected to.

 Plaintiff's counsel impliedly concedes that the only ground or reason assigned by the trial court for granting a new trial was counsel's remark to the jury about income tax, but he invokes the rule enunciated in *McNulty v. Hotel Sherman Co.,* 280 Ill. App. 325, and *Rowoldt for Use of Flanagan v. Cook County Farmers Mut. Ins. Co.,* 305 Ill. App. 93, that the reviewing court is not confined to the ground or reason stated by the

trial court for the allowance of a new trial and may examine the complete record for any other errors committed. However, in the *Rowoldt* case the court added that ''we encourage the practice in the trial court of stating its reasons as an aid to this court,'' citing Rule 1 of the Appellate Court, Rule 36 of the Supreme Court, and Illinois Revised Statutes 1939, ch. 110, par. 259.36 [Jones Ill. Stats. Ann. 105.36]. The principal other questions raised or assigned as error by plaintiff in this proceeding involve the court's instructions and other portions of defendant counsel's argument to the jury, which will be considered later.

 Plaintiff relies largely on the discretionary power of the trial judge to grant a new trial. We are not unmindful of the rule and cases which hold that the trial judge is allowed broad discretion in granting motions for a new trial, and that his action will not be reversed on appeal except in case of clear abuse of such ·discretion; but this rule, like all others, has its limitations. A judge is not empowered to set aside a verdict in any case simply because he does not agree with it. The case at bar presents the question whether the trial court was correct in a ruling of law on which its order granting a new trial is based; defendant has here presented questions which fairly challenge the propriety of the order, and we would not be warranted in disregarding them by simply reiterating the principle that a reviewing court should not interfere with the discretion of the trial judge. In *Wettaw v. Retail Hdw. Mut. Fire Ins. Co.*, 285 Ill. App. 394; the court pertinently observed: ''That the act [Section 77 of the Civil Practice Act] is designed to promote justice, and to prevent a verdict, warranted by the record and justified by the evidence, from being set aside and lost to the party who was fairly entitled thereto, and such litigant forced to undergo the hazards of another trial with its further incidents of delay and expense, does

not admit of argument. We think it clear that where a party litigant feels aggrieved at the order of a trial court in setting aside a verdict in his favor, and presents to a reviewing court, upon a petition for leave to appeal from such order, grounds which are reasonably debatable and fairly challenge the propriety of the grant of the new trial, the reviewing court should permit the appeal to be taken. Such an interpretation of section 77 is in consonance with justice and in accord with the evident spirit of the act. * * * If the rule were otherwise, then when a new trial was awarded solely upon the ground that the verdict was contrary to the manifest weight of the evidence, section 77 would be meaningless and of no avail to the complaining party however much he might be injured by the ruling. We think the section contemplates that where such ground is presented, the reviewing court should ascertain whether the record raises a fair question as to the propriety of the court's ruling, though it be on matters of fact, and if it does, then grant leave to appeal from the order awarding the new trial. *Of course where a question is reasonably presented as to whether the court erred as a matter of law in so ruling, the right to review cannot be denied. Adamsen v. Magnelia, supra* [280 Ill. App. 418]; *Randall v. Randall,* 281 Ill. App. 169.'' (Emphasis supplied.)

██ Section 77 contemplates that the reviewing court will grant a petition for leave to appeal to determine whether the trial court exceeded or abused its judicial discretion. There should and must be some opportunity afforded litigants to have these issues determined; and if petitions for leave to appeal are to be brushed aside on the ground that the order granting a new trial was within the sound discretion of the court, section 77 would accomplish no practical purpose. Cases cited by plaintiff in support of his contention as to the broad discretionary power of the court may be

readily distinguished from the case at bar. In *Gavin v. Keter,* 278 Ill. App. 308, the bill of exceptions was silent as to the ground on which a new trial was granted, and the appealing party was unable to advise the reviewing court as to the reasons which influenced the trial judge in entering the order. *Couch v. Southern Ry. Co.,* 294 Ill. App. 490, was another case where the basis of the award of a new trial did not appear of record. The Appellate Court properly held that it was incumbent upon petitioner to show that the trial court had abused its discretion, and since the reason or reasons for the granting of a new trial did not appear of record, the reviewing court was impelled to hold that it could not disturb the order of the trial court. The same situation was presented in *Village of La Grange v. Clark,* 278 Ill. App. 269. In *In re Estate of Velie,* 318 Ill. App. 550, and in *Wagner v. Chicago Motor Coach Co.,* 288 Ill. App. 402, new trials were granted because the trial judges were dissatisfied with the evidence. In *Carter v. Geeseman,* 303 Ill. App. 280, and *Ledferd v. Reardon,* 303 Ill. App. 300, the judges granted new trials for the reason that the verdicts were entirely opposed to the weight of the evidence; and in *Cassens v. Tillberg,* 294 Ill. App. 168, the reviewing court upheld the action of the trial court in granting a new trial because the instructions as a series were inconsistent and erroneous.

■■ In the instant proceeding the trial judge was not called upon to exercise his discretion in determining whether the verdict was against the manifest weight of the evidence or in determining the credibility of witnesses; his discretion was apparently exercised *in favor of defendant* on all matters raised in the motion for a new trial with the exception of the propriety of counsel's argument to the jury as to income tax. The crucial question presented in defendant's petition is whether the trial court erred *as a matter of law* in

granting a new trial. The court had no discretion in deciding that question; the solution must be based on a consideration of the law rather than on the more general issue of the limits of judicial discretion.

■■ This leads to an examination of whether the court erred in holding that defendant's counsel was not justified in informing the jury that under the law the amount a successful party receives by way of verdict in a personal injury case is not subject to federal income tax. Under the express provision of the United States Internal Revenue Code (26 U. S. C. A. 22 (b) (5)), the amount of money so received by a plaintiff is not taxable. The trial court never held, nor has plaintiff at any point contended, in this proceeding, that the amount of damages awarded him for his injuries is subject to federal income tax; indeed, the fact that it is not taxable is tacitly conceded; rather, plaintiff contends, and the court was evidently of the opinion, that it was ''prejudicial error'' to apprise the jury of such fact. The issue whether the amount received by plaintiff in a personal injury case is taxable had not been ruled on by the trial judge previous to the final arguments by counsel to the jury; as a matter of fact, the issue had never been presented prior to the final arguments. The only issue which had any slight relation to it was whether plaintiff in proving damages was entitled to introduce evidence of plaintiff's gross or net earnings prior to the accident; in granting the new trial the court called attention to his ruling in chambers that damages should be based on gross earnings and not on any deductions thereupon; but he was evidently under the misapprehension that, in view of that ruling, counsel for defendant exceeded the bounds of propriety in reminding the jury that they should not include anything in their verdict for income tax on the amount of the verdict; whether the parties were entitled to introduce evidence as to plaintiff's net or

gross earnings had nothing to do with provisions of the Internal Revenue Code exempting amounts received by way of a verdict in a personal injury case from federal income taxes.

Plaintiff assigns several reasons for his contention that the question of income tax is foreign to the measure of damages. He first argues that a tort-feasor should not be allowed to mitigate damages by virtue of the fact that the injured party has to pay income tax on his earnings. As stated, the trial judge ruled, outside the presence of the jury, that he would allow evidence of plaintiff's gross earnings, not his take-home pay, as a result of which defendant was not allowed to introduce evidence of plaintiff's net earnings or to show deductions for taxes. Since the jury's verdict could be based only on plaintiff's gross earnings, there is no point to plaintiff's argument. Nor is there any justification for the contention that defendant sought to mitigate damages or to show that plaintiff had received anything from other sources. Defendant does not maintain that plaintiff should receive anything less than he is rightly entitled to under the law, but it does contend that the jury, after awarding plaintiff an amount of money based on his gross earnings, pain and suffering and medical expenses, should not add anything to this amount for income tax because there is no tax. In other words, defendant is not asking that the amount of damages should be reduced or mitigated, but is asking only that nothing be added to the total amount of damages. In support of his contention plaintiff relies on, discusses, and quotes at length from, *Billingham v. Hughes,* 1 K. B. 643, 9 A. L. R. (2d) 311; *Chicago & N. W. Ry. Co. v. Curl,* 178 F. (2d) 497; *Stokes v. United States,* 144 F. (2d) 82; and *Smith v. Pennsylvania R. Co.* (Ohio App.), 99 N. E. (2d) 501. These cases hold that the trial court's refusal to allow evidence of plaintiff's net, after tax deductions, was

not reversible error, principally because "such deductions are too conjectural," as JUDGE FRANK observed in the *Stokes* case, and would involve insuperable difficulty in estimating the amount of income tax which the injured person would have become liable to pay on his future earnings because of dependencies, outside income and other considerations. Since the trial court in the case at bar likewise refused to allow evidence of plaintiff's net earnings, it is obvious that those cases are not in point.

 Plaintiff further argues that it "distorts the intent of the law" to remind the jury that there is no tax on the amount awarded by verdict. It is difficult to perceive how the law is distorted by advising the jury of a simple and concise provision of a statute. Such procedure is not uncommon in the trial of cases; statutes and ordinances are frequently set forth, when applicable, for the enlightenment of the jury. In death cases the statute provides that "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, not exceeding the sum of $20,000" (Ill. Rev. Stats. 1951, ch. 70, par. 2) [Jones Ill. Stats. Ann. 38.02], and juries are so informed. On the other hand, it is common practice, in the trial of injury cases, for plaintiff to urge the jury to consider the depreciation of the dollar in arriving at the amount of damages to be assessed. By the same token, why should it not be proper for defendant to remind the jury that their award is not subject to a federal income tax. Lastly, it is argued that, pending an appeal, the income tax provision might be changed so that by the time the plaintiff receives his money it would be taxable. This is purely speculative, and there is no basis in the record for it.

187

So far as we have been able to ascertain, the precise issue involved in this case was never decided in any court of record until the Supreme Court of Missouri handed down an opinion dated the very day on which the trial court in the instant case entered the order granting a new trial. In *Dempsey v. Thompson* (Mo.), 251 S. W. (2d) 42 (7–14–52), an action under the Federal Employers' Liability Act for personal injuries, the jury awarded plaintiff $55,000 damages, which was reduced by remittitur, and judgment was entered for $45,000, from which defendant appealed. It was there contended, *inter alia*, (1) that the trial court erred in refusing to permit defendant to inquire of plaintiff's witness, an actuary, if he knew that there is no income tax on awards for personal injuries; in refusing defendant's request for an instruction informing the jury that no income tax could be assessed upon an award for personal injuries, and that nothing should be included in the jury's verdict for federal, state or city taxation; and in refusing to permit counsel for defendant to state in his argument to the jury that the amount of any award to plaintiff would not be subject to income tax; and (2) that any award for future earnings lost to plaintiff should be based on net earnings after deduction for income taxes. The court adopted the general rule that an award of damages for loss of future earnings should be based on actual pecuniary loss, cannot be rigidly adhered to insofar as it may be impossible to compute with reasonable accuracy the amount of income tax liability that may attach thereto, but reached the following conclusion, which is applicable to the case before us: "But it does not follow that defendant was not entitled to have the jury instructed that any amount awarded plaintiff was not subject to Federal * * * income tax. Present economic conditions are such that most citizens, most jurors, are not only conscious of, but acutely sensitive

188

to, the impact of income taxes. * * * It is reasonable to assume the average juror would believe the award involved in this case to be subject to such taxes. It seems clear, therefore, that in order to avoid any harm such a misconception could bring about, it would be competent and desirable to instruct the jury that an award of damages for personal injuries is not subject to Federal or State income taxes." The court then put the query: "Can there be any sound reason for not so instructing the jury?," and succinctly answered its own question by saying that "we think of none," supported by the reasoning that "surely, the plaintiff had no right to receive an enhanced award due to a possible and, we think, probable misconception on the part of a jury that the amount allowed by it will be reduced by income taxes. Such an instruction would at once and for all purposes take the subject of income taxes out of the case." The court then set forth the form of instruction that could properly be given and concluded by saying that "we are now convinced and hold that an instruction substantially in the form above outlined should be given in this case," and at the same time also held that its decision in the earlier case of *Hilton v. Thompson*, 360 Mo. 177, 227 S. W. (2d) 675, "insofar as it is in conflict with the ruling here made, should no longer be followed." In other words, the *Hilton* case was reversed insofar as its prospective application was concerned.

■ We consider the *Dempsey* case as well reasoned and precisely in point. Since counsel's remark about income tax in this proceeding was a correct statement of law, we perceive no reason why it should be held to be improper, illegal or prejudicial. Why should the truth be withheld from the jury; why should they be allowed to speculate as to whether their award would be subject to income tax? In reaching their verdict, the jury are fixing an amount which, when re-

189

ceived by plaintiff, will be adequate compensation for the specific injuries suffered by him, including loss of earnings, pain and suffering, physical disability, and the nature, extent and permanence of the injuries, at the same time taking into consideration, as they may in federal liability employment actions, mitigation of damages on account of plaintiff's contributory negligence. In reaching their decision, the jury in all likelihood will consider how much of an award the plaintiff will actually get net, not an amount from which income taxes will have to be deducted. If the jury determine that $50,000 is the correct amount, they will presumably award that sum if they feel there will be no income tax; on the other hand, if they believe there is to be an income tax paid on that amount under the law, they will award a much larger sum in the hope that after the tax has been paid, plaintiff will still be able to retain $50,000. In the circumstances, the jury are entitled to be reminded, or informed, of these facts. In *Wetherbee v. Elgin, Joliet & Eastern Ry. Co.,* 191 F. (2d) 302, a wrongful death action under the Federal Employers' Liability Act, the court took occasion to say that "the way the amounts awarded in verdicts in personal injury cases have been rapidly increasing is a matter of concern to all who are interested in a fair and orderly administration of justice." It is a fair inference that if juries are allowed to speculate on whether or not their award is subject to federal income tax, as they undoubtedly do, with the probable misconception on their part that the amount awarded will be so reduced, much larger verdicts will frequently result. The injured party should not be entitled to an additional amount for tax obligation which does not exist, in fact or in law. Informing the jury correctly on the subject would, as the court commented in the *Dempsey* case, "at once and for all purposes take the

190

subject of income taxes out of the case,'' and that is as it should be.

■ On oral argument the court and counsel discussed the propriety of an instruction such as was suggested in the *Dempsey* case. Plaintiff, in an added memorandum, argues that since no instruction on income taxes was tendered or given, this question cannot here be decided, and that under the circumstances defendant was precluded from reminding the jury that there was no income tax on the amount awarded by verdict. The *Dempsey* case holds that not only is it proper, but desirable, to have the jury instructed as to the provision of the Federal Revenue Code. Because of the importance of the question, we have no hesitancy in holding that if it is proper for the court to so instruct the jury, as we think it is, it logically follows that it is proper for counsel to remind the jury of the law, regardless of whether an instruction is given by the court.

Plaintiff argues that strange avenues would be opened if the jury were reminded of the fact that verdicts are not subject to federal income tax, and he suggests that if such a course were proper, he would be entitled to tell the jury that plaintiff will not get the full amount of the verdict because he has to pay attorney's fees and costs. Various decisions cited by defendant afford an answer to this argument—*Washburne v. Burke,* 84 Ill. App. 587, *Oelrichs v. Spain,* 82 U. S. (15 Wall.) 211, and *Ritter v. Ritter,* 381 Ill. 549, holding in general that such expenses are not allowable in the absence of a statute or some agreement or stipulation. In personal injury cases attorney's fees are not governed by statute, but by contract between attorney and client; some clients are willing to pay more, and some attorneys demand more, than others. We perceive no danger of abuse in arguing absence of an income tax on the verdict.

191

With respect to instructions we find that plaintiff's counsel, in his motion for a new trial, objected to each and every one of instructions 12 to 30, both inclusive. We cannot, within the reasonable confines of an opinion, set forth these instructions in detail or answer the criticisms leveled at them; nor, indeed, do we think it necessary to do so. Defendant evidently tendered only such instructions as were supported by ample authority, and in its briefs submits authority for each instruction tendered; we have examined them, and we think they contain correct statements of the law. Absolute accuracy is a level of excellence to be aimed at; it is seldom, if ever, attained; and courts will not, for the want of it alone, set aside verdicts, but are justified in doing so only in cases where they can see that the jury were likely to be misled. *Palmer v. Miller*, 310 Ill. App. 582; *Bobalek v. Atlass*, 315 Ill. App. 514; and *Kavanaugh v. Washburn*, 320 Ill. App. 250. "The test, then, is not what meaning the ingenuity of counsel can at leisure attribute to the instructions, but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men acting as jurors will understand the instructions." *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207.

Defendant calls attention to the fact that in the memorandum brief submitted to the trial court by plaintiff's counsel, objections were made to only certain of the instructions tendered by defendant, one of which, No. 27, told the jury, in substance, that future losses must be discounted to make them equivalent to only their present value. Plaintiff admitted that loss of earnings was to be reduced to present value but contended that this instruction told the jury that amounts for pain and suffering were also to be reduced to their present value. We do not perceive how "future losses" could include "pain and suffering"; they could per-

tain only to loss of earnings. "Pain and suffering" are not a "loss" and cannot be so construed. Moreover, plaintiff's tendered instruction No. 5, which was given by the court, was subject to the very criticism which his counsel directs at defendant's instruction No. 27; and it has been frequently held that a party cannot be heard to complain of an instruction when his own is subject to the same criticism. *Petersen v. General Rug and Carpet Cleaners, Inc.*, 333 Ill. App. 47; *Weinrob v. Heintz*, 346 Ill. App. 30.

 Plaintiff also complains of instruction No. 26 which told the jury the weight that was to be given the mortality table that was offered in evidence by plaintiff. In discussing the competency of this evidence in chambers, plaintiff's counsel stated that he intended "to offer an instruction telling the jury that neither the mortality table nor the calculations of the actuary are conclusive evidence but are merely items to be considered by them together with other contingencies such as loss of employment, reduction in work, inability to work as one grows older, * * * and * * * merely leave it to the jury." When, in the course of the trial, plaintiff offered the mortality table in evidence, defendant objected unless the court properly instructed the jury as to its use. Plaintiff's counsel then assured the court and opposing counsel that he was going to offer a covering instruction, but since he did not do so, defendant tendered instruction No. 26 which covered the subject and is a correct statement of the law.

 It is further urged by plaintiff that the court gave repetitious instructions on the question of damages. Defendant was entitled to have the jury properly instructed on this important phase of the case. Instruction No. 25 told the jury that damages were to be diminished in proportion to the amount of plaintiff's negligence, if any; No. 28 advised them that

193

the amount of damages prayed for or demanded by plaintiff was not to be considered as evidence; No. 29 charged the jury that they should not assume that defendant was liable simply because the court gave instructions on the question of damages; and No. 30 told them that they should not be influenced by sympathy. Each of these instructions covered a distinct and separate element, and, as we view it, defendant was clearly entitled to have the jury instructed on each of them; it would be difficult to combine various elements in one instruction; it is preferable for each instruction to embrace a single legal proposition as provided and required in Rule 9 of the United States District Court for the Northern District of Illinois.

 Plaintiff devotes the first fourteen pages of his brief to a statement of facts relating to defendant's liability and the nature and extent of plaintiff's injuries as affecting damages; nevertheless, his counsel finally states that ''neither the amount of the verdict, nor the question of liability is before the court, on this petition.'' If that be true, the amount of the verdict was not affected by the alleged erroneous argument and the instructions of which plaintiff now complains. The error, if any, was not prejudicial, and therefore no ground for granting a new trial.

 Lastly, it is urged that some of the arguments of defendant's counsel to the jury respecting damages were prejudicial. Without detailing the remarks, we find upon examination of the record that they were made in an effort to have the jury fairly determine whether plaintiff was entitled to the amount of $285,- 000, which he claimed as damages in his amended *ad damnum.* Moreover, defendant counsel's comments were necessitated by the nature of plaintiff's final argument. On a blackboard he set up figures, based on plaintiff's yearly salary (of $4400.00), future loss of earnings, medical expenses, and compensation for pain

and suffering, which he built up to the sum of $300,000. With these figures on the blackboard in plain view of the jury, he made his argument. Against a $300,000 backdrop, so to speak, he made his plea for a verdict which would be fair to plaintiff. He described in detail plaintiff's abdominal surgery—the incision through the skin, through the fat, through the fascia to open the abdomen—standard surgical procedure, done under anaesthetic, but presented in such a way as to suggest that it was almost unique in medical annals. During this phase of the argument plaintiff's counsel had surgical instruments brought into the courtroom. In effect, he set up props in the courtroom, as scenery designers do on the stage, and against this background attempted to play on the jurors' sympathies. He advised the jury, in substance that the injuries bankrupted the plaintiff. ''Do you know,'' he asked the jury, ''of anything more acute, more far-reaching, more personal, more totally bankrupting than a personal injury, especially in the case of a man who is a working man and whose only asset is his ability to work? You destroy his ability to work and you destroy his asset just as if you go out and you put a fire to some factory.'' He charged that defendant didn't want to ''know that this man is flesh and blood''; that they ''laugh at'' pain and suffering. He impassionedly told the jury that ''we are dealing here with the value, the money value, of a man's health. Well, they sell race horses, don't they, for a half a million dollars? They sell paintings for two and three hundred thousand dollars, and what is it worth to have health to a working man * * * ?'' Indeed, the conduct and remarks made by defendant's counsel during the trial were extremely mild and conservative in comparison to the standard and pace set by counsel for plaintiff. If any prejudice was created in the minds of the jury it was prejudice against the defendant. We are at a loss to

understand what standard plaintiff's counsel used in claiming that the jury were prejudiced by defendant counsel's conduct; it could not be the standard established by his own remarks.

For the reasons indicated we are of the opinion that the superior court erred in granting plaintiff a new trial. The order is reversed.

 Upon return of the verdict, judgment thereon was entered for plaintiff in accordance with the general practice in Cook county. Plaintiff's motion for new trial asked the court to "set aside the verdict of the jury in this case, to vacate the judgment thereon and to grant a new trial." In the order allowing the motion for a new trial no reference was made to the verdict returned or the judgment thereon. Notwithstanding this omission the effect of allowing the motion was to vacate the judgment and set aside the verdict. 39 Am. Jur., New Trial, sec. 204, citing, with other cases, *Gross v. Wood,* 117 Md. 362, *Giles v. Ryan,* 317 Pa. 65, and *Adams v. Kennard,* 122 Ore. 84. The granting of the new trial being erroneous, the vacation of the judgment is likewise erroneous. Reversal of the order allowing a new trial carries with it a reversal of the vacation of the judgment. The case is not controlled by *Scott v. Freeport Motor Casualty Co.,* 379 Ill. 155, where judgment had not been entered in the trial court. Accordingly the cause is remanded with directions to reinstate or restore the judgment heretofore entered.

*Order reversed and cause remanded with directions.*

NIEMEYER, J. and BURKE, J., concur.