Terry Alan Roberts, a Minor, by Clarence M. Roberts, His Father and Next Friend, Appellee, v. Hyland Builders Corporation, a Corporation, and G. Gauss Painting & Decorating Company, a Corporation, Appellants.

Gen. Nos. 48,414, 48,415.

First District, First Division.

February 26, 1962.

William McKenna, of Jacobs & McKenna, of Chicago (Joseph B. Lederleitner, of counsel), for appellant, Hyland Builders Corporation, a corporation, and Arthur Abraham, George J. Gore and Robert L. Brody, of Chicago, for appellant, G. Gauss Painting & Decorating Company.

Seidner & Seidner, and Harry I. Parsons, of Chicago (H. Lester Seidner, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

These appeals are from an order granting a new trial in an attractive nuisance case brought by Terry Alan Roberts, a minor. The jury found both defendants not guilty. The court granted plaintiff's motion for a new trial against both defendants. The defend-

ants prosecuted separate appeals, which were consolidated here.

Plaintiff seeks to recover for injuries resulting from a fire started by him in a newly completed, uninhabited building on August 16, 1953. Plaintiff, then a seventh grade pupil, lowered himself through a broken window into the basement. While there, he dropped a lighted match on the floor, and this started a fire. As the flames "started to crawl over the paint to the paint cans," he threw on the flames the "clear liquid" contents of a pail, and "blue flames" and "black smoke engulfed the whole room." The fire damaged the new building and caused severe burns to the upper portion of plaintiff's body. The defendant Hyland Builders Corporation was the general contractor in charge of the construction of the building, and defendant G. Gauss Painting & Decorating Company was the painting subcontractor.

The trial judge, in his remarks at the hearing of the motion, clearly defined his reasons for granting the new trial.

Prior to the trial, defendant Hyland was served by plaintiff with interrogatories, calling for the names and addresses of all employees of Hyland Builders Corporation that had worked in the building during its construction. During the trial, Hyland placed an employee on the stand and interrogated him at length before plaintiff discovered that the witness was not listed in Hyland's answers to plaintiff's interrogatories. The court struck the testimony of the witness and instructed the jury that the witness was disqualified and all of his testimony was to be disregarded. Defendant Hyland then placed another employee on the stand and after he was questioned as to his name and address, plaintiff moved to disqualify this witness on the ground that his address had not been listed by Hyland. After investigation and argument out of the presence of the jury, the court

allowed plaintiff's motion and instructed the jury that this witness was disqualified and his testimony (his name and address) should be disregarded.

Subsequent to the above, defendant Gauss tendered the disqualified witnesses as witnesses in its behalf, on the ground that it had not been a party to the interrogatory answers of Hyland. After discussion, the court again disqualified the witnesses because of the Hyland incident. The trial then proceeded to a conclusion.

During the final argument to the jury, plaintiff's attorney stated that one of the owners of defendant Hyland testified that "it was the duty of some of the foremen of the subcontractors to lock up. . . . That's his statement. . . . There's no proof here by any one of his employees." At this point, an attorney for defendant Hyland said, "Now, your Honor, I am going to object to that, because it was counsel himself that suppressed any proof on that subject." The objection was sustained, and the jury was instructed to disregard the remark.

At the hearing on the motion for a new trial, and in discussing the final argument incident, counsel for defendant Hyland said, "It was an inadvertent slip of the tongue that I used the words that I did, but it was only—it was inadvertent in that I was taken by surprise by the type of argument that Counsel made all during his closing argument."

After hearing counsel at length, the remarks of the court to counsel for defendant Hyland include, "You were the one who initiated the difficulties that we ran into, and I told you at the time that I didn't know what effect it would have on the jury either way, and I was very dubious then whether we should continue. . . . But here we had two instances of witnesses being withdrawn from the stand because the Court disqualified them in the presence of the jury, and all the admonition in the world may or may not have any

effect. . . . You can't tell what goes on in a person's mind, and if these people got the impression that the plaintiff was trying to suppress evidence, they would certainly not take it well. . . . I am convinced, gentlemen, that regardless of which way this verdict went, justice would demand that I grant a new trial, and that's what I am going to do. I think this case should be tried over because of the things that were committed during the course of the trial."

The trial court is allowed broad discretion in granting a new trial, and the motion is addressed to the sound judgment of the court. Unless a clear abuse of discretion is affirmatively shown, the trial court's decision in granting a new trial will not be reversed. A trial court is allowed greater latitude in granting a new trial than in denying one. (Thomas v. Chicago Transit Authority (1958), 16 Ill App2d 470, 476, 148 NE2d 833; Stobbs v. Cumby (1956), 9 Ill App 2d 138, 142, 132 NE2d 448; Ledferd v. Reardon (1940), 303 Ill App 300, 306, 25 NE2d 116.) As was said in Josate v. Mack (1939), 302 Ill App 246, 248, 23 NE2d 778:

"Necessarily, the trial court should have the discretion to decide with finality whether a new trial is necessary in the interests of justice, as it is in his power to observe the multiplicity of situations as they arise during the progress of the trial and is in a better position to weigh the effect upon the jury and to judge whether or not substantial justice had been done."

After examining the record in this case in the light of the above rules, we conclude that defendants have failed to show affirmatively a clear abuse of discretion in the granting of a new trial. We agree with the trial court that, with two witnesses having been withdrawn from the stand because the court disqualified them in the presence of the jury, "all the admonition in the world may or may not have

280

any effect" if the jury received the impression that plaintiff was trying to suppress evidence. Prejudicial conduct during final argument has been recognized as a ground for a new trial in this state, regardless of whether the court has ordered the remarks stricken or not. Jacobson v. National Dairy Products Corp. (1961), 32 Ill App2d 37, 43, 176 NE2d 55.

■ The separate appeal of defendant Gauss is grounded on the theory that there was no evidence whatever of negligence on its part, and the trial court should have directed a verdict in its favor; also, that the trial incidents previously discussed were not caused by defendant Gauss. In view of our conclusion, a discussion of the evidence on the question of whether the trial court should have directed a verdict in favor of either defendant, or on the question of the propriety of the sanctions imposed by the court for defendant Hyland's failure to properly answer plaintiff's interrogatories, is not deemed pertinent. We agree with the trial court that it is not possible to separate the defendants "as to the harm that might have been done in the minds of the jury," and that justice requires that this case should be tried over again as to both defendants.

For the reasons stated, it is our opinion that the order of the trial court, granting the motion for a new trial as to both defendants, was proper, and it is hereby affirmed.

Affirmed.

BURMAN, J., concurs.

ENGLISH, J., dissents.

MR. JUSTICE ENGLISH, dissenting: .
The majority opinion and the trial judge's statement of his reasons for granting a new trial in this case

make it clear, I believe, that the heart of this matter was the mere open-court presentation of witnesses who were subsequently disqualified. The statement of the trial court included the following:

> "*But more important* is the fact that it (the controversy over closing argument) came about through the defendant's action in that *you should not have attempted to put those witnesses on the stand when you knew or should have known that they were disqualified in the first instance.* Therefore, you made it necessary for your adversary to make the motion to disqualify. You were the one who initiated the difficulties that we ran into, and I told you at the time that I didn't know what effect it would have on the jury either way, and I was very dubious then whether we should continue.
>
> "I don't mind telling you that *had the verdict gone the other way I would have considered the same things that I'm thinking of now, in that no one knows what effect these things have on a jury. Whether they go for you or against you, you never know. But here we had two instances of witnesses being withdrawn from the stand because the Court disqualified them in the presence of the jury, and all the admonition in the world may or may not have any effect.* We know that as trial lawyers, that you can't tell what goes on in a person's mind, and if these people got the impression that the plaintiff was trying to suppress evidence, they would certainly not take it well. On the other hand, had the plaintiff won his case and the defendant complained that he was prejudiced because of the action in the courtroom, I would certainly listen to him.
>
> "I am convinced, gentlemen, that regardless of which way this verdict went, justice would demand that I grant a new trial, and that's what I

am going to do. I think this case should be tried over because of the things that were committed during the course of the trial.

*"As far as the second defendant Gauss is concerned, I have no way of separating him as to the harm that might have been done in the minds of the jury.* Gauss cannot sit back and take the benefits and the advantages of what I think were improper, and Gauss will just have to go along on the new trial the same as the other defendants.

"The motion will be granted."

It is thus apparent that plaintiff's claim of defense counsel's prejudicial wording of his objection on closing argument was not a question of real concern to the trial judge. His statement that a verdict for plaintiff would, in effect, have been equally vulnerable, indicates that he gave no great weight to the point regarding the closing argument. The vital question, then, is whether the trial court exceeded the scope of its proper discretion in granting a new trial because one of the defendants put on the stand, and sought to question, two witnesses who had not been properly listed in answer to an interrogatory and were, therefore, later disqualified by the court.

At common law there was no authority in the court to require a party to give his deposition or answer interrogatories, and such power now exists only by virtue of statute and rule providing for its exercise. (People v. Graber, 397 Ill 522, 525, 74 NE2d 865.) The applicable rule of the Supreme Court is the source of the sanctions available to the trial court for the purpose of enforcing compliance. (Ill Rev Stats, c 110, § 101.19–12(3).) The pertinent part of that rule reads:

*"Failure to Comply With Order or Rules.*

If a party, or any person at the instance of or by collusion with a party, unreasonably *refuses* to *comply with any provision of Rules* 17 to 19–12,

283

both inclusive,* or Rule 22, *or fails to comply with any order* entered under said rules, the court may, on motion, in addition to remedies elsewhere specifically provided, order one or more of the following, as may be appropriate: that the party be non-suited; that his complaint be dismissed; that all or any part of his pleadings be stricken and judgment rendered on the remaining pleadings in the case; that he be debarred from filing any other pleading; that he be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense respecting which discovery is sought; or that further proceedings be stayed pending compliance. In lieu of or in addition to the foregoing, the court may by contempt proceedings compel obedience by any party or person to any subpoena issued or order entered under said rules." (Emphasis supplied.)

From this language it can be seen that there is no catchall discretionary authority given to the court to enforce compliance with the interrogatory rule. This is in contrast with the federal rule which grants somewhat similar specific sanction authority, but commences with the words, "The Court may make such orders in regard to the refusal (to obey an order) as are just, and among others the following: "

It can also be seen that the sanctions specified do not include the exclusion of a witness whose name or address was withheld. But, beyond that, it seems clear to me that all of the sanctions authorized stem from the first part of the rule which is limited to two specific situations, neither of which existed in the case before us. These are: (1) if a party unreasonably refuses to comply, or (2) fails to comply with an

---

* Rule 19–11 is the one providing for interrogatories and answers thereto.

order directing compliance. In the case before us, there is no evidence of a refusal to comply, reasonably or unreasonably, and there was no order at all.

Since, as I have mentioned, the rule contains no broad authority for the court to use its discretion, but is limited to the imposition of certain specific sanctions, and since the Supreme Court is undoubtedly aware of the problems involved, I would prefer to await extension of the rule by the Supreme Court, if, indeed, such extension is to be considered desirable.

I am aware, however, that this court on two occasions indicated that, under circumstances other than those existing in the cases before it, it might uphold exclusion of an unlisted witness. I refer to Granger v. Turley, 20 Ill App2d 488, 490, 156 NE2d 610; and Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 210, 164 NE2d 209.

In Granger, after stating that the rule provided appropriate sanctions for failure to comply with discovery *orders,* the court found that the trial judge had not abused his discretion in permitting an unlisted witness to testify because (1) the evidence of the witness was merely cumulative, and (2) there was no showing of bad faith or intentional concealment.

Applying the rule of that case to our own, I find that (1) there was no discovery order, (2) the testimony of the two witnesses was cumulative, having been corroborated by the testimony of Schoenbrod and others, and (3) there was no substantial showing of bad faith.

In Perez, the court apparently considered the sanction as authorized but unwarranted by the facts, and a judgment based, in part, on the testimony of an unlisted witness, was affirmed.

Then we come to Battershell v. Bowman Dairy Company (Appellate Court, First District, No. 48411, filed December 13, 1961, reh den January 3, 1962). There

this court reversed and remanded because "the court should have excluded the witness or imposed as an alternative a sanction which would have effectively protected plaintiff against harm to his case due to lack of prior knowledge of this witness." As I read this language, the alternative sanction referred to could not reasonably be said to suggest a more severe, but, rather, a less severe sanction; such as affording an opportunity to opposing counsel to question the witness before the testimony is received. This is a procedure employed in other jurisdictions, and commonly in Illinois in criminal cases.

Returning to the opinion of the court in Battershell:

> "In other jurisdictions courts have held appropriate the exclusion of such witnesses from testifying. (Citing New York, New Jersey and Missouri cases.) Only for such reasons as *failure to make timely objection* or that a *continuance* has been granted in lieu of exclusion or that *the testimony complained of has not been harmful,* have courts held proper the testimony of such witnesses. (Citing a Washington and a New Jersey case.) Such extenuating factors are not present here." (Emphasis supplied.)

The Washington case cited is Sather v. Lindahl, 43 Wash2d 463, 261 P2d 682 (1953), and was an appeal from the granting of a new trial. In deposition * the plaintiff had stated that he didn't know of any witnesses to the accident, and at the trial presented four eyewitnesses. No objection was made until closing arguments to the jury, at which time the defendant moved for a mistrial.** The motion was denied, but after a verdict for plaintiff a new trial was granted.

---

* The Washington discovery rules were taken verbatim from the federal rules.

** Plaintiff, in the case at bar, never made a motion for mistrial.

In reversing, the Supreme Court said at page 683:

"We award no accolade to the appellant for his conduct, but the deceived party cannot wait until argument to the jury has begun to ask for relief when he has been confronted with a surprise witness or witnesses. Relief in such a case is conditioned upon a *timely request* by the deceived party while the trial judge still has an opportunity to determine whether a *continuance* is an adequate remedy, or whether he should *refuse to permit the witness to testify* or should *order his testimony stricken.* The motion for a mistrial here was not timely made and was properly denied; *the motion for a new trial should not have been granted* and the order granting it is set aside; and the trial court is directed to enter a judgment on the verdict." (Emphasis supplied.)

This decision and the reference in Battershell to the feature of timely objection, or the absence of it, bear interestingly on the case at bar. The first of the two witnesses had testified at length (eight pages of the record) before objection was made.

There is a long-recognized rule on this point. It was recently restated by Justice Daily in Bonczkowski v. Kucharski, 13 Ill2d 443, 150 NE2d 144, where he said at page 454:

"Moreover, the admission of testimony without objection waives the incompetency of a witness. Chicago Title & Trust Co. v. Sagola Lumber Co., 242 Ill 468; Doty v. Doty, 159 Ill 46."

To the same effect is the opinion of Chief Justice Hershey in Callaghan v. Miller, 17 Ill2d 595, 601, 162 NE2d 422.

Plaintiff contends that this principle does not hold in a suit brought by a minor, citing Johnston v. Johnston, 138 Ill 385, 388, 27 NE 930. I am inclined to agree

that competency of evidence cannot be waived on behalf of a minor. Regardless of that, however, the waiver cases demonstrate conclusively the exact opposite of the proposition that the mere offer of an incompetent witness constitutes error sufficient to warrant a new trial. The two principles cannot co-exist. If the mere offer constitutes mortal error, objection could not be waived by minor or adult.

For the reasons I have indicated above, I believe that the two witnesses in the instant case should have been permitted to testify. If, however, despite the misgivings which I have expressed, we were to accept as applicable here the extreme rule of the Battershell case, I would still be forced to dissent.

No cases have been cited which support any sanction more drastic than the exclusion of the testimony of a nonlisted witness or the striking of such testimony as may have been admitted. All of that was done in this case prior to the jury's verdict. To open new ground beyond that to the point of making the mere offer of such a witness the grievous kind of error which justifies a new trial after jury verdict, finds no support whatsoever in the rule on which it must be founded.

Even more disturbing to me, is my fear that this sort of obeisance to rules causes us to become blinded to the real purpose of a trial—to ascertain the truth from the testimony of persons having knowledge of the facts. I appreciate and favor the intention of the rule to eliminate a hidden-card type of trial, and reasonable sanctions are necessary for its enforcement. But we now go too far in the opposite direction. Or so I believe.

An example of what I mean in application of the rule is shown by the status in this case of the defendant, Gauss. No interrogatories were served on it; there was no refusal or failure on its part to comply with

any rule; it violated no order; it did not put the two witnesses on the stand; its counsel got into no argument over their disqualification or who was responsible for it. The witnesses were disqualified and the jury was instructed to disregard their limited testimony. The jury found the defendants not guilty. And here is Gauss, facing a new trial because of the discovery procedure involvement of the other defendant.

I believe that Gauss should have been permitted to call the two witnesses as its own. Furthermore, I believe Gauss was entitled to a directed verdict.

I trust that I am duly mindful of the rule that a reviewing court should be reluctant to reverse a trial judge in the granting of a new trial. I am reluctant, but the discretion of the trial court in this regard is not unlimited, or the statute authorizing appeals therefrom would be meaningless. (Stilfield v. Iowa-Illinois Gas & Electric Co., 25 Ill App2d 478, 488, 167 NE2d 295.) In my opinion, the new trial order in this case exceeded the proper bounds of that discretion and should be reversed.