(No. 35101.—

THE PEOPLE *ex rel.* Frank Borelli, Appellant, *vs.* FRANK G. SAIN, Sheriff, *et al.,* Appellees.

*Opinion filed March 20, 1959—Rehearing denied April 21, 1959.*

322

JOSEPH I. CARBONARO, and LOUIS CARBONARO, both of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago,

(FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JAMES J. GLASSER, of counsel,) for appellees.

Per CURIAM: Frank Borelli, herein referred to as relator, appeals from a judgment of the criminal court of Cook County quashing a writ of *habeas corpus* in a proceeding attacking the validity of his arrest and detention for the purpose of extradition. The appeal comes as a sequel to *People ex rel. Borelli* v. *Lohman,* 13 Ill.2d 506, wherein we accorded relator a new hearing in the matter, and contentions made in the present case require some detail of the history of the litigation.

Relator was arrested by the sheriff of Cook County upon an extradition warrant issued by the Governor of Illinois upon demand of the Governor of New Jersey, the warrant reciting that relator was under indictment in New Jersey for the crimes of conspiracy, possessing and selling narcotics, and keeping and maintaining a common nuisance in Bergin County, New Jersey, on "divers days and times between October 1, 1950, and February A.D. 1955." Relator filed a petition for a writ of *habeas corpus* alleging that the warrant was insufficient and that he was not in the demanding State at the time of the crimes charged. Respondents, who were the sheriff of Cook County and a messenger from New Jersey, made a return alleging the Governor's warrant and the cause was heard on the petition and return. When the matter came on for hearing for the first time respondents stipulated relator would deny his presence in New Jersey if called upon to testify, then introduced the Governor's warrant into evidence and sought to rely upon it as establishing a *prima facie* case that relator was a fugitive from justice. The court, however, compelled respondents to introduce the testimony of John E. Jackson, a witness furnished by New Jersey who was present and identified relator and testified to the latter's presence in New Jersey during the period set forth in the

indictment. Although the action of the court was tantamount to placing upon respondents the burden of proving relator was a fugitive from justice, no objection was made, nor appeal taken, thus the propriety of the ruling was not before us on the previous appeal. When relator sought to cross-examine Jackson the court sustained objections to questions designed to attack the witness's credibility and thereafter quashed the writ. Relator appealed to this court, his sole assignment of error being that the trial court had unduly restricted his right to cross-examine Jackson. We held this to be true in view of the conflict in evidence created when respondents stipulated to the testimony of the relator and, with no determination of the merits, reversed the judgment and remanded the cause for a new hearing.

Upon remandment the cause was redocketed in the criminal court and assigned to a different judge for hearing. On this occasion respondents refused to stipulate to the relator's testimony, or to consent to the introduction of the former stipulation, and were permitted to establish a *prima facie* case solely by the introduction of the Governor's warrant into evidence. Jackson was again present and after unsuccessful efforts to have him called either as a witness for respondents, or as a court's witness, relator called him to the stand and elicited information that he had a criminal record, that he had on two occasions testified for the government and received probation, that he had not been arrested in connection with the charges against relator, and that he had testified against relator concerning the charges before a New Jersey grand jury in 1954. Thereafter, Jackson was called as a witness by respondents at which time he identified relator, told of meeting relator in New Jersey in May, 1952, and stated that he had subsequent meetings and conversations with relator in New Jersey during 1952 and 1953. After some cross-examination by relator, the scope of which sought to establish that

Jackson was an informer who hoped to benefit himself, the relator rested his case and the court again quashed the writ of *habeas corpus*. The present appeal has followed.

An extradition warrant issued by the Governor of Illinois is properly admitted in evidence, (*People ex rel. Eveland* v. *Harrell,* 404 Ill. 81,) and such a warrant, reciting the essential facts, affords a *prima facie* case that an accused is a fugitive from justice thereby imposing upon him the burden of proving that his detention is illegal and that he should be discharged. (*People ex rel. Goshern* v. *Babb,* 4 Ill.2d 114; *People ex rel. Mortensen* v. *O'Brien,* 371 Ill. 351; *People ex rel. Moore* v. *Wirz,* 349 Ill. 80.) The People may, if they so desire, introduce any of the documents which were before the Governor when he issued the warrant for the purpose of establishing the grounds upon which he found a *prima facie* case, (*People ex rel. Guidotti* v. *Bell,* 372 Ill. 572,) but it is not necessary to do so inasmuch as the rendition warrant in itself is *prima facie* evidence that an accused is a fugitive from justice. (See: *People ex rel. Chevlin* v. *O'Brien,* 372 Ill. 640, 642; *People ex rel. Mortensen* v. *O'Brien,* 371 Ill. 351, 353; 20 I.L.P., Fugitives from Justice, sec. 22.) Applying these principles to the record on the present appeal, it is manifest that the introduction of the Governor's warrant was, even without the supporting testimony of Jackson, sufficient to make a *prima facie* case which placed upon relator the burden of proving he was not a fugitive from justice or, more specifically, that he was not in New Jersey at the time of the crimes as his petition alleged. It is equally manifest that relator completely failed to meet his burden.

Relator does not dispute the law, nor does he make any contention that his proof on the occasion of the second hearing was sufficient to overcome the *prima facie* case made by the warrant. He adopts a theory, rather, that our decision on his previous appeal is to be construed as a mandate that Jackson's testimony was essential to the

*prima facie* case and that, as a matter of law, the trial court was bound to adhere to the procedure followed at the first hearing even though such procedure was erroneous. If this is not done, relator rationalizes, the credibility of Jackson becomes immaterial and he is deprived of the cross-examination to which we held he was entitled in our previous opinion. Such a theory is entirely fallacious whether viewed from a standpoint of substance or procedure. The present record discloses that Jackson was present at the new hearing, that he was called as a witness by both parties, and that the relator, within bounds of relevancy, was permitted to attack the witness's credibility and motives for testifying by both direct and cross-examination. Regardless of the procedure followed, relator was thus afforded the right denied him on the first hearing. Moreover, Jackson's testimony assumed importance on the first appeal not because it was held to be essential to the establishment of the respondents' *prima facie* case, but because of the conflict in evidence created when respondents stipulated the *prima facie* case away by agreeing that the relator would deny his presence in New Jersey at the time of the crimes charged. A similar situation did not occur at the new hearing, nor was our decision a mandate that the procedure which produced it should be followed. When a court of review does not determine the merits of a case but merely reverses and remands without specific directions, the judgment of the court below is entirely abrogated and the cause stands as if no trial had occurred. (*Kinney* v. *Lindgren,* 373 Ill. 415.) The only specific direction in our previous consideration of the cause was that relator be given a new hearing.

Consistent with his theory that the new hearing should be treated as but a continuation of the first trial, relator argues that the stipulation in the record of the first hearing must be considered as evidence refuting the *prima facie* case in the new hearing since there was no "motion or other

proceeding to vacate the stipulation." Such an assertion misconceives the law. Except by consent of the parties, stipulations on a former trial are not admissible upon a subsequent hearing. (*People ex rel. Shake* v. *Lord,* 315 Ill. 603, 607; *Rigdon* v. *More,* 242 Ill. 256, 258.) Here the respondents expressly refused their consent to the admission of the stipulation at the second hearing. Considering the entire record, the fact remains that relator offered no proof to support his claim that he had not been in New Jersey at the time of the alleged crimes, but relied solely upon an effort to destroy the credibility of Jackson whose testimony supported the recitals of the extradition warrant. Giving due consideration to the principle that the determination of a witness's credibility rests in the first instance with the trial judge, we find no basis for saying that Jackson testified falsely, or that his testimony would serve to weaken or overcome the *prima facie* case made by the warrant. We add too that relator's failure to testify in his own behalf in a civil proceeding of this nature detracts greatly from his position. While appraising similar conduct in *People ex rel. Guidotti* v. *Bell,* 372 Ill. 572, 577, this court said: "It is obvious that if he had cared to subject himself to the hazards of cross-examination or to the possible penalties for perjury, he could largely have benefited his own case by a full and frank disclosure of his whereabouts at the times in question." See also: *People ex rel. Webb* v. *Babb,* 5 Ill.2d 35.

Relator next contends the Governor's warrant failed to make a *prima facie* case of fugitivity because it did not recite the specific date or dates upon which the alleged crimes were committed, and after which relator fled from the demanding State. Such an argument overlooks that one of the crimes charged was conspiracy. Although relator's argument represents the warrant as reciting only that crimes were committed on divers days between 1950 and 1955, the precise recital is that the crimes were com-

mitted on "divers days and times between October 1, 1950 and February A.D. 1955." The warrant thus established a continuous and definite period during which relator was alleged to have been a member of a conspiracy in New Jersey and afforded relator ample opportunity to show he was not in the demanding State during such period. When the crime charged involves a continuing act such as conspiracy, the presence of the defendant in the demanding State need not be on the exact date charged, it being sufficient if he was present on any of the dates alleged in the indictments of the demanding State. (*People ex rel. James v. Lynch, post*, p. 380, adopted March Term 1959; *People ex rel. Moore* v. *Wirz*, 349 Ill. 80; *People ex rel. Mortensen* v. *O'Brien*, 371 Ill. 351.) Here we find not only that the warrant reflected the indictments as showing a definite period for the conspiracy, but also that Jackson testified to relator's presence in New Jersey during such period. Under the circumstances we cannot say a *prima facie* case was not made, especially in view of the presumption of fugitivity supporting the requisition of the demanding State. See: *Stumpf* v. *Matthews*, (D.C. Cir.) 195 F.2d 35, 37.

The judgment of the criminal court quashing the writ of *habeas corpus* and remanding relator to the State of New Jersey was correct and is affirmed.

*Judgment affirmed.*