MARGARET SANDBERG, Plaintiff-Appellant, *v.* LEONARD SANDBERG, Defendant-Appellee.

(No. 55944; )

First District (5th Division)—April 27, 1973.

Stuart N. Litwin and Gary E. Dienstag, both of Glenview, for appellant.

Jerome H. Torshen, Ltd., of Chicago, (Jerome H. Torshen and Robert F. Berrey, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff appeals from that part of a decree of divorce entered in her favor which provided that defendant pay $175 per month child support for each of the three children adopted during the marriage and $1000

per month alimony to plaintiff. The issue raised on appeal is whether the child support and alimony awards were inadequate.

At the trial plaintiff testified in her own behalf. She and defendant were married in 1949 but have been living apart since January 26, 1969. There are three children, Steven, 17, Robert, 14, and Amy, eight. The marital home cost about $43,000 and carries about a $23,000 mortgage. Plaintiff drives a 1969 Cadillac and defendant a 1970 Lincoln Continental. In 1969 her bills were $4276 per month. They were itemized (in approximate amounts) as follows: $150 medical, $326 counseling, $150 miscellaneous, $150 home entertainment, $70 personal expenses, $35 children's allowances, $335 jewelry, $35 contributions, $350 household help, $80 gifts, $325 movies, $1000 clothing, and $1400 operation of household. The $4276 monthly figure does not include income taxes, decorating expenses, furniture, real estate taxes and automobile upkeep. Her son Robert is currently under psychiatric care; defendant pays these bills. She and the children intend to move to San Diego, California, due to Robert's illness. She has $3000 in a savings account; the source of this account was the $14,000 insurance proceeds defendant gave her after their house was burglarized and her jewelry stolen. She spent the remainder of the proceeds (beyond the $3000) for jewelry. She owned an "expensive" mink coat and a $2000 ring. She has no income other than what is given to her by defendant.

Maurice Schwartz, a certified public accountant, testified for plaintiff. After examining defendant's business records he determined that defendant held the following interests: 100% interest in Senate Steel and Supply Corporation (Senate Steel); a 50% interest in trust No. 5087 which holds title to the property rented by Pleasant View Convalescent and Nursing Center, Inc. (Pleasant View); a 50% interest in Pleasant View; and a 50% interest in Metalex Corporation. Defendant's income tax return for 1968 shows his gross income to be $30,825. Defendant's cash flow for the year 1969 totaled about $83,000. This represents $12,000 salary from Pleasant View, $35,000 salary from Metalex, $1800 from an annuity policy; and approximately $34,200 in loans from Metalex ($6700) and Senate Steel ($27,500). Both of the latter figures were shown as loans outstanding on the companies' books. Corporate records further reveal loans totaling about $95,000 from Metalex and Senate Steel from August 1967 to August 1969. A nominal repayment was made on a Metalex loan; there was no indication that interest was paid on these loans. On cross-examination Schwartz testified that it is a question of judgment whether to label funds withdrawn by a shareholder of a corporation from the corporation as a loan or a dividend. A loan would not be considered income for federal tax purposes where as a dividend would be. He would advise a

client who made no attempt to repay a loan to a corporation to declare such as a dividend. Schwartz believed that Metalex had a potential sales price of $900,000. This figure was arrived at by estimating Metalex's earnings for the current fiscal year at $90,000 and then capitalizing said earnings by a factor of ten.

Defendant, Leonard Sandberg, was called as a Section 60 witness by plaintiff. Since March 1969 he has resided in an apartment at 1 East Schiller, Chicago; the monthly rent is $395. He furnished the apartment with approximately $6000 in loans from Senate Steel and Metalex. He signed no notes on these loans; he believes he repaid the Metalex loan; no interest was paid thereon. Defendant was shown the summary of the loan account statement prepared by Maurice Schwartz and said it was possible he owed such sums of money to Metalex and Senate Steel; that no notes were given for the loans; that no interest had been paid thereon; that he intended to repay them. During 1969 he and plaintiff took several trips together. Defendant characterized expenses for 1969 as a "very heavy expensive year."

On examination by his own counsel defendant testified that his 1969 federal income tax return showed a gross income of $47,500 and after taxes earnings of about $36,000. Although he left the marital home in January 1969, plaintiff still had her checking account "and whatever she wanted." He voluntarily gave her $350 per week, paid the mortgage payments and hospitalization expenses ($240 per week) incurred by his son Robert. He felt that Metalez could be sold for three or four times its annual earnings, "if lucky"; the company has shown no steady growth. In order to pay plaintiff the aforementioned amounts of money after he left her, he borrowed as much money as was available from his corporations; he felt so guilty that he was ready to give her anything she wanted. He and his partner in Pleasant View intend to add a 100 bed unit to the existing structure once Pleasant View pays off its debt to Senate Steel. Then defendant intends to sell his share of the corporation, repay his personal loans to Senate Steel with the proceeds and then liquidate Senate Steel.

Harvey Callick, defendant's personal and business certified public accountant, testified for the defendant. The actual net income of Metalex for the fiscal year 1969 was about $49,000 as contrasted to the $90,000 figure used by Maurice Schwartz. Callick felt that to determine the value of the company, its earnings should be capitalized by a factor of six or seven. The net income of Trust No. 5087 for 1969 was $18,700; net income of Pleasant View for 1969 was $3200. Capitalizing these earnings by a factor of ten and considering the net assets of Senate Steel to be approximately $30,000 (as Schwartz used in computing defendant's net worth),

he estimated defendant's net worth at $345,000. If earnings were capitalized by a factor of seven, as he believed was proper, the net worth figure would be $240,000. Schwartz had estimated defendant's net worth at about $885,000.

Callick further testified that defendant has taken loans from Senate Steel and Metalex over the years and there have been repayments as to both. He didn't consider the sums withdrawn from these companies during 1969 as dividends, and they were not reported as such on defendant's federal income tax return. He has analyzed defendant's loan account with Senate Steel from 1960 to 1969; $126,540 has been borrowed and $49,968 repaid. It was his opinion that amounts withdrawn from Senate Steel and Metalez were loans and not income. Defendant's partner in Metalex also receives loans from the company but in far smaller amounts; he repays them periodically. The Internal Revenue Service audited Senate Steel's books from 1962 to 1965. They accepted defendant's determination that amounts withdrawn during this time were loans and not dividends. There has been no IRS audit since 1965. In 1969 defendant borrowed $28,000 from Senate Steel and repaid $50. In the same year he borrowed $22,000 from Metalex and repaid $14,000.

In addition to the alimony and support payments, the decree of divorce further provided that defendant pay all extraordinary medical expenses incurred by the children including psychiatric expenses if (as to the latter) a prior court order is entered requiring such; that defendant pay for the children's college educations provided that they "are educable" and that defendant is financially able to provide for such at the time; that the marital home be sold and the proceeds thereof divided equally between plaintiff and defendant; that defendant make the mortgage payments on the home until it is sold; that plaintiff be given all the furnishings in the marital home except for certain specified items; that defendant deliver title to the 1969 Cadillac to plaintiff; that defendant maintain $60,000 in insurance policies on his life with his children as beneficiaries; that he maintain a $25,000 policy with plaintiff as beneficiary until she dies or remarries; and that he pay her attorney's fees of $7500.

*Opinion*

■■ The standards to follow in determining the amount of alimony to be awarded were set forth in *Byerly v. Byerly*, 363 Ill. 517, 525, 2 N.E.2d 898:

> "Matters which are usually considered by the court in determining alimony are the ages of the parties, their condition of health, the property and income of the husband, separate property and income, if any, of the wife, the station in life of the parties as they have heretofore lived, and whether or not there are any children

dependent upon either for support, and also the nature of the misconduct of the husband. It was never intended that the allowance of alimony shall be used as a means of visiting punitive damages upon the husband in favor of the wife for the husband's misconduct, but, guided by the different phases, heretofore mentioned, of the situation of the parties, such allowance is to be made as may furnish the wife support or contribute to her partial support. (*Gilbert v. Gilbert,* 305 Ill. 216.)"

The same factors control the amount of child support to be awarded. (*Kramp v. Kramp,* 2 Ill.App.2d 17, 117 N.E.2d 859; *Everett v. Everett,* 25 Ill.2d 342, 185 N.E.2d 201.) The determination of the amounts of the awards lies within the sound discretion of the trial court, and its decision will not be set aside unless it is contrary to the manifest weight of the evidence. *Hoffmann v. Hoffmann,* 40 Ill.2d 344, 349, 239 N.E.2d 792.

■■ As may be seen from the statement of facts above, great emphasis was placed at trial on whether sums of money withdrawn from Senate Steel and Metalex were dividends and therefore income for federal income tax purposes or loans and therefore not income for said purpose. Plaintiff has continued to stress this point on appeal, and we believe with undue emphasis. This issue is relevant only as it affects one of the crucial factors in determining the amount of alimony and child support, namely, defendant's ability to pay. (See *Klebba v. Klebba,* 108 Ill.App.2d 32, 40, 246 N.E.2d 681.) If the sums withdrawn over the years were loans, plaintiff's estimation of defendant's income is sharply reduced. If they are labeled dividends, and therefore income, they increase his annual income but reduce his equity in the respective companies by such amounts and subject him to income tax which would materially reduce that purported income. Therefore, his cash flow ultimately available for payment of alimony and child support is adversely affected regardless of the accounting treatment given to the withdrawals. See *Page v. Page,* 32 Ill.App.2d 422, 178 N.E.2d 129.

The alimony and child support awards total $18,300 per year. This figure does not include future psychiatric expenses which may be incurred by the children and which defendant will be under an obligation to pay when ordered by the court. If such treatment is required, and it appears from the record that it well might be since it is currently being given, the total annual alimony and support payments will be well in excess of $20,000. We further note that defendant is required by the decree to carry a substantial amount ($85,000) of life insurance on his life, with the children and plaintiff as beneficiaries.

■■ There was a great discrepancy in the testimony as to defendant's

net worth. The figures ranged from $845,000 as testified by Schwartz, plaintiff's expert, to below $240,000 when defendant's and his expert's (Callick) testimony are considered. We note that Schwartz based his valuation of defendant's equity interest in Metalex on an estimated current earnings figure of $90,000 per year, whereas the corporate records show current earnings of about $49,000 per year. Assuming that the trial court had accepted the book figure of earnings for Metalex, and assuming Schwartz's theory of capitalization at ten to one as against Callick's six or seven to one, this alone would reduce that corporation's net worth figure of $900,000 by $410,000. We cite this fact only to show that evaluating defendant's net worth was a matter of resolving conflicting testimony and therefore one for the trial court to determine.

■■ Finally, we point out that plaintiff bases her demand for higher alimony not on a scale of living during the years of the marriage but upon the monthly expenditures of $4276 during 1969, the year they lived separate and apart. Either defendant's beneficence or guilt feelings resulted in expenditures by plaintiff in 1969 which defendant described as a "very heavy expensive year." Plaintiff's testimony of $4276 per month for expenses in 1969 is not in itself sufficient to form a proper base for determining alimony and child support.

■■ We also find the following statement from 24 Am.Jur.2d, Divorce and Separation, Sec. 635, p. 756, worthy of consideration:

> "In many cases, though, the parties have lived in such a way as to consume all their income, and have even lived beyond their means before separation, so that it is obvious that each cannot maintain the same high standard of living in two separate households after the separation. Therefore it cannot be necessarily true that the wife should be furnished with funds to maintain the scale of living to which she was accustomed before the separation, and the court will determine the amount of alimony by considering what would be appropriate in the light of the incomes and resources of the parties."

■■ In conclusion, after our review of the record we believe the court's award for alimony and child support was not against the manifest weight of the evidence. The cases cited by plaintiff are factually inapposite. *Klebba v. Klebba*, 108 Ill.App.2d 32, 246 N.E.2d 681; *Turns v. Turns*, 96 Ill.App.2d 347, 239 N.E.2d 144; *Riddlesbarger v. Riddlesbarger*, 336 Ill.App. 226, 83 N.E.2d 382 (abst.).

The child support and alimony awards are affirmed.

Affirmed.

ENGLISH and LORENZ, JJ., concur.