*In re* MARRIAGE OF MARTHA LEE McMAHON, Petitioner-Appellant and Cross-Appellee, and WILLIAM WILLARD McMAHON, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 15596

Opinion filed April 10, 1980.

TRAPP, J., specially concurring.
CRAVEN, J., dissenting.

Harlan Heller, Ltd., of Mattoon (Harlan Heller, of counsel), for appellant.

Lawrence W. Grabb, of Sims, Grabb & Bennett, of Mattoon, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

We are asked to rule that the trial court should have split the marital property 50/50 instead of 60/40.

We cannot do so.

An even cut might have been proper and quite reasonable. But it is *not mandated* under the new law, and the failure to award one-half does not of itself establish reversible error.

The lower court is affirmed.

### BACKGROUND

This is the second time around the reviewing track. An earlier appeal from the judgment of dissolution of marriage—entered January 18, 1978—was brought to this court by petitioner, Martha Lee McMahon. There, she successfully challenged the trial court's award of child support and its division of marital property. In an order pursuant to Supreme Court Rule 23 (73 Ill. 2d R. 23), the trial court was directed to conduct further proceedings, and at the conclusion thereof the court below amended its prior order. Petitioner again appeals, once more challenging the amount of child support awarded and the division of property.

The facts are these. At the time of the initial hearings in this case, the wife was 49 years old and the husband was 52. They had been married for approximately 28 years and had two daughters. The youngest daughter, Kimberly, was 14 years old and lived with petitioner.

During the last 15 years of their marriage, the parties developed a successful business which provided financial income and some accumulation of wealth. It is not disputed that this accumulation of wealth is, for practical purposes, all marital property.

A review of the history of this marriage reveals that both petitioner-wife and respondent-husband contributed to its financial success to some extent. At the time of the marriage, the wife was employed full-time by her father, while the husband attended college and was employed at a foundry. He soon decided to begin his own business in the trucking industry and expanded his initial venture to include milk routes and

automobile transports. She handled a portion of the bookkeeping for these businesses.

After leaving her father's employ, the wife worked for Sears, Roebuck & Company, then Montgomery Ward, and finally Moore Farm Buildings, where she was an office manager and bookkeeper. All the money she acquired, as did that of the husband, went back into the marriage.

In 1960, Sturdi-Built Farm and Commercial Building Company was begun by the McMahons along with Bill McElwee. This company is involved in the pole barn building business and it constitutes the principal asset of the parties. Petitioner's job with the company was basically the same as her job at Moore except somewhat more extensive. Respondent, who sold his milk routes to acquire capital for the company, handled everything but sales. After additional employees were added, he also began working in that area of the business, and in 1964 he purchased McElwee's interest. Initially, operation of the company required respondent to work days which began at 5:30 a.m. and terminated from 5:30 to 9 p.m.

During the period of time that the parties operated Sturdi-Built, petitioner took care of the responsibilities at home. A cleaning lady helped with these obligations and later the parties employed a lady to do the ironing, one to care for the younger child, and a yard man. As the business prospered, petitioner's duties increased correspondingly.

Sturdi-Built prospered and provided the parties with sufficient income to allow for other investments. Respondent made all decisions in this regard and his decisions were, apparently, quite successful. Upon remand, the trial court placed a total valuation on the assets acquired during the marriage in excess of $1,311,000.

Evidence as to the parties' respective incomes was also presented to the trial court. The petitioner-wife's gross income is approximately $50,000 and respondent-husband's is approximately $150,000.

Petitioner contends that the trial court erred in dividing the marital property of the parties. In the amended order, the trial court awarded her the marital residence, various stocks, a bank account and other properties in addition to a $210,000 cash payment from respondent. These assets totaled approximately $520,000. Respondent was awarded assets—including Sturdi-Built Farm and Commercial Building Company—totaling in excess of $1,001,000. He was, however, ordered to pay petitioner $210,000 and to pay her attorney's fees. Subtracting the $210,000 payment and attorney's fees from respondent's assets results in an award of approximately 60% of the marital estate to him and 40% to her.

Petitioner claims that the trial court erred in its consideration of the factors enumerated in section 503(c) of the Illinois Marriage and

Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) She contends that consideration of those factors would have resulted in an *equal division* of the property.

### STANDARD OF REVIEW

■■ Prior to addressing this contention, we must resolve the issue of the appropriate standard of review under the new Act. Respondent argues that the appropriate standard is whether the trial court abused its discretion when dividing the marital property. Petitioner does not challenge that standard and we have concluded that it is, indeed, the appropriate yardstick by which to review the trial court's action.

Prior to passage of the new Act, courts of review examined awards under the special equities concept of section 17 of the Divorce Act. In doing so, the question was whether the trial court had abused its discretion. *Valdez v. Valdez* (1978), 57 Ill. App. 3d 81, 372 N.E.2d 1087.

Since the Marriage and Dissolution of Marriage Act was enacted, there seems to have been some confusion as to what standard should be applied when reviewing the trial court's award: *In re Marriage of Glidden* (1979), 71 Ill. App. 3d 376, 389 N.E.2d 657 (abuse of discretion); *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792 (the court's division of property supported by the evidence); *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065 (not against the manifest weight of the evidence nor contrary to section 503(c) of the Act).

■ In section 503(c) the legislature has provided the court with 10 factors that are to be considered when dividing marital property. We do not believe that the legislature intended, by this enumeration of certain factors, to change the standard by which we are to examine the lower court's ruling. When a statute is adopted from another State, the construction previously placed on it by courts of that State accompanies it and is treated as incorporated therein—unless the legislature manifests a contrary intent. *Cook v. Dove* (1965), 32 Ill. 2d 109, 203 N.E.2d 892.

Jurisdictions with statutes similar to our new Act apply the abuse of discretion standard in reviewing divisions of marital property. (*In re Marriage of Davis* (1975), 35 Colo. App. 447, 534 P.2d 809; *Eschenburg v. Eschenburg* (1976), 171 Mont. 247, 557 P.2d 1014.) In fact, the overwhelming majority of appellate courts in this country apply the standard of abuse of discretion when reviewing the adjustment of property rights in divorce cases. 24 Am. Jur. 2d *Divorce and Separation* §933 (1966).

We believe the question presented to us is whether—after considering the factors enumerated in section 503(c)—the trial court abused its discretion.

My brother Craven's brittle dissent says that he does not agree that

"abuse of discretion" is the proper standard, but at the same time he states that the trial court has "discretion" to divide the marital property under section 503(c) of the Act. And—without citation to authority—he reads the Act as mandating a 50/50 split absent "compelling evidence" to the contrary. Apparently comfortable with the terms "compelling evidence" and "manifest weight of the evidence" without further definition, the dissent then suggests that we review the division of marital property to determine if there has been compliance with the statutory criteria. Under this standard, the discretion once granted somehow dissolves and we substitute our judgment for that of the trial court. We cannot agree that the legislature intended such a result.

Mr. Justice Craven's rejection of the abuse of discretion standard is premised on inconsistent reasoning and on even weaker authority. The dissent reasons that in matters of substantive law the trial court has discretion only when it is bounded by "well-understood principles within which it should be exercised." Ignoring this rule, the dissent then finds that no discretion is given the trial court under the Act because the Act places explicit restraints upon the trial court's authority. Apparently these "explicit restraints" which the dissent suggests we use to review the trial court's decision are not "well-understood principles" which would confine the amount of discretion granted the trial court. The dissent attempts to obfuscate the issue by reference to terms such as "arbitrary," "capricious," and "wide discretion." In fact, the grant of discretionary power in this type of case is regulated by all relevant factors, including the 10 enumerated in section 503(c), and failure of the trial court to properly consider those factors would constitute an abuse of discretion.

Having reviewed the trial court's decision in the case at bench under the applicable standards, we conclude that it did not abuse its discretion. We affirm.

## ABUSE OF DISCRETION

Section 503(c) requires the court to consider all relevant factors including, *inter alia*, the contribution of each party which encompasses the contribution of a homemaker; the duration of the marriage; the relevant economic circumstances of the parties; the age, health, station, occupation, amount of income, skills, liabilities and needs of the parties; custodial provisions for any child; whether the apportionment is in lieu of, or in addition to, maintenance and the reasonable opportunity of each spouse for future acquisition of capital assets and income.

Petitioner notes that the parties were essentially the same age and in good health. She argues, however, that a less than equal split is an abuse of discretion where respondent's income is greater than hers, his potential future acquisition of assets is greater, the marriage was of long duration

and custody was awarded to her. In support of her position she cites numerous cases from other jurisdictions where an equal distribution was affirmed on appeal.

But the cases cited by petitioner are not dispositive of this appeal. A review of those opinions shows that the appellate courts did not hold that an equal division was required, only that it was not an abuse of discretion. (*Roe v. Roe* 1976), 171 Mont. 79, 556 P.2d 1246; *In re Marriage of Harding* (Colo. App. 1975), 533 P.2d 947.) A fair and equitable division does not require that the marital estate be split in equal portions. *Marcotte v. Marcotte* (Colo. App. 1974), 525 P.2d 507.

In its first order, the court below here noted that it had considered all of the statutory elements including the fact that petitioner had been employed during the marriage and had, with the assistance of domestic help, maintained the household of the parties. Upon remand, the court reiterated its initial finding, that respondent contributed more in the acquisition, preservation and appreciation in value of the marital estate. The court stated that it did not intend to depreciate the contribution of petitioner but because of respondent's efforts in acquisition of the estate, an equal division would be improper.

The trial court's statements do not, as petitioner claims, show that it considered only this one factor. Instead, these statements show that the court felt that this factor, which is well supported by the record, precluded an equal division.

■ Under the facts of this case a 60%-40% division, omitting the tax consequences, does not show an abuse of discretion. The court classified respondent as the "chief asset of the corporation"—the corporation which had provided the parties with the wealth they enjoyed. It also considered the disadvantages of attempting to divide the corporation (valued at $722,781) where the evidence reflected an apparent inability by the parties to cooperate on any major business question.

## TAX CONSEQUENCES

Petitioner next claims that the tax consequences alone show that the trial court abused its discretion. If the court had awarded her $210,000 more in assets, rather than the cash payment, no tax consequences would have occurred. The cash payment of $210,000 will require respondent to earn $420,000 to pay the award since he is in the 50% income tax bracket. The trial court considered this factor and concluded that the $210,000 payment should be ordered in spite of the tax consequences.

We do not believe this shows an abuse of discretion. Respondent has shown a remarkable ability to enter into profitable investments. The trial court's decision that Sturdi-Built could become endangered if divided between the parties is supported by this record. If the trial court had

awarded sufficient additional assets to petitioner to offset this $210,000 payment, respondent would have been deprived of the benefit of his other investments. The trial court's order allows him to decide how the $210,000 payment shall be made. Allowing him to decide how this indebtedness is to be satisfied is not an abuse of discretion.

■■ As an appellate court our task is not to substitute our judgment for that of the trial court but to review its decision based upon the appropriate statutory factors and standard of review. While an equal division of assets may have been reasonable or even warranted in the present case, a 60-40 division was not an abuse of discretion.

### Child Support

Petitioner next contends that the trial court's award of child support was not proper. She contends that the financial resources of respondent is a relevant consideration ignored by the trial court.

The relevant factors to be considered when determining the amount of child support are:

"(1) the financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents." Ill. Rev. Stat. 1977, ch. 40, par. 505.

A hearing as to the financial needs of the minor was conducted upon remand. The evidence presented at that hearing indicates that prior to the dissolution the parties enjoyed a comfortable standard of living, the minor is in good physical and emotional health, and petitioner has adequate resources to support herself. Prior to the separation, the expenses to maintain the home were approximately $1,700 per month. One-third of this amount equals $566.

After hearing this evidence, the trial court ordered respondent to pay $375 per month in child support plus all medical, dental, and optical expenses of the child. In making this award, the trial court considered the after-tax incomes of the parties as well as the fact that the respondent continued to give substantial gifts to the child. Since respondent enjoyed a greater income, the court determined that he should pay a greater percentage of the support.

■■ We conclude that an order requiring respondent to pay two-thirds of the minor's support cannot, under the facts of this case, be disturbed as an abuse of discretion. *Sandberg v. Sandberg* (1973), 11 Ill. App. 3d 495, 297 N.E.2d 654.

CROSS-APPEAL

The final issue is raised in the cross-appeal of respondent. He contends that the prior order of this court remanded only for a determination as to the values of the various properties and a resolution of the support question. Thus, he claims redistribution of the marital property is contrary to the order of this court. We disagree.

A trial court must follow specific directions contained in the order and mandate of the appellate court but the appellate court, in reversing and remanding, need not give specific directions. In the absence of direct guidelines, the trial court must examine the appellate court's opinion and determine from it, and from the nature of the case, what further proceedings would be proper and not inconsistent with the opinion. *Gieske v. Hardware Dealers Mutual Fire Insurance Co.* (1965), 61 Ill. App. 2d 119, 208 N.E.2d 900.

Our prior Rule 23 order reversed that portion of the order providing for the division of property and the award of child support. The cause was remanded "for further proceedings not inconsistent with the views expressed herein." Those views, in regard to the property division, were that the trial court make factual findings of value and that each party had a mutual burden of proving the value of the items which may be contested during the course of the division of property by the trial court.

Rather than tying the trial court's hands, as respondent argues, our prior order anticipated a new division of property if, after placing valuation on these assets, the court felt that it was warranted.

Where a court of review does not determine the merits of the case but merely reverses and remands without specific directions, the judgment of the court below is entirely abrogated and the cause stands as if no trial had occurred. (*People ex rel. Borelli v. Sain* (1959), 16 Ill. 2d 321, 157 N.E.2d 417.) The prior order of this court did not contain specific directions and the trial court's actions were proper.

The decision of the court below is affirmed.

Affirmed.


Mr. JUSTICE TRAPP, specially concurring:

The majority opinion has stated the standard of review to be whether or not there was an abuse of discretion in the action of the trial court. One finds that the phrase "abuse of discretion" may be so used as to equally express almost opposite and contrary meanings.

Few opinions of our courts have discussed the diverse meanings of the phrase. In *Keen v. Davis* (1969), 108 Ill. App. 2d 55, 63, 246 N.E.2d 467, 471, the court adopted the statement:

"[T]hat discretionary judicial action is abused '* * * when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' "

See also *Peek v. United States* (9th Cir. 1963), 321 F.2d 934, *cert. denied* (1964), 376 U.S. 954, 11 L. Ed. 2d 973, 84 S. Ct. 973.

Such definition does not adequately state a standard of review which is appropriate in the examination of the decree here at issue.

I suggest that "abuse of discretion" as a standard of review is better defined as either a departure or deviation from the rationale of the case law and statutes which amounts to error at law, or is clearly against the evidence in the case. See *Hall v. Chicago & North Western Ry. Co.* (1953), 349 Ill. App. 175, 183, 110 N.E.2d 654, 657, *rev'd on other grounds* (1955), 5 Ill. 2d 135, 125 N.E.2d 77.

In the latter context I concur.

Mr. JUSTICE CRAVEN, dissenting:

The appropriate standard of review for the division of marital property under section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)) according to Justice Mills' majority opinion is: "Whether—after considering the factors enumerated in section 503(c)—the trial court abused its discretion."

Justice Trapp, in his special concurrence, states that he does not concur with Justice Mills on the abuse of discretion standard if it means that there is no review of the trial court's action as long as "reasonable men could differ as to the propriety of the action taken by the trial court." Rather, Justice Trapp suggests, "That 'abuse of discretion' as a standard of review is better defined as either a departure or deviation from the rationale of the case law and statutes which amounts to error at law, or is clearly against the evidence in the case."

In *In re Marriage of Glidden* (1979), 71 Ill. App. 3d 376, 379, 389 N.E.2d 657, 659, the court affirmed the trial court's division of marital property. It stated: "[T]he trial court's order incorporated the scheme of distribution contemplated by section 503(c) in its division of the marital property and that no abuse of discretion occurred here." (71 Ill. App. 3d 376, 379, 389 N.E.2d 657, 659.) In *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065, the trial court awarded all marital property to the wife. The court affirmed the lower court's disposition of property because it was not against the manifest weight of the evidence nor

contrary to section 503(c) of the Act. This court, in *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 940, 378 N.E.2d 792, 794, affirmed the trial court's disposition of property because it was "justified by the evidence presented." Recently, in *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126, the court held that the trial court's disposition of property was not an abuse of discretion and was not against the manifest weight of the evidence. *Inter alia*, the *Lee* court said this about determining whether a trial court abuses its discretion: "It would seem that if reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.

As pointed out by Justice Mills, there does seem to be confusion as to what standard should be applied when reviewing a trial court's award of property. But I think the majority opinion has only added to the confusion.

Justice Mills cites 24 Am. Jur. 2d *Divorce and Separation* §933 (1966) for the proposition that "the overwhelming majority of appellate courts in this country apply the abuse of discretion standard when reviewing the adjustment of property rights in divorce cases." While this is a correct statement, it is not too revealing and perhaps misleading. As this American Jurisprudence section and its footnotes point out, not only is there a wide variation between the States' different statutes, but there is also a wide variation in the way the different States define their "abuse of discretion" standards. This truism is underscored by the difference of opinion in Justice Trapp's special concurrence as to what constitutes an abuse of discretion. In other words, to imply that the different States review the disposition of property the same way simply because their standards of review can be lumped under the appellation of "abuse of discretion" is tantamount to saying that the laws governing divorce in the various States of the Union are the same simply because all the States have divorce laws.

Ostensibly, Justice Mills does not choose to define the abuse of discretion standard he would use to review the lower court's disposition of property under marital dissolution. It has been said that a subject that cannot be defined cannot be intelligently discussed, nor the principles governing it assigned to their proper places. (Bowers, Judicial Discretion of Trial Courts (unpublished Nat'l College of State Trial Judges 1969).) Such an empty standard does not even attempt to give any guidance to the trial courts which must divide the parties' property upon dissolution. Consequently, the fruition of case law precedent, by which the administration of justice is greatly served, has little hope under this undefined standard of review.

Irrespective of the standard of review employed, the trial court must divide the parties' marital property according to the dictates of section 503(c) of the Act, which, in pertinent part, reads:

"It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, , including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1977, ch. 40, par. 503(c).

The new Act has abolished any use of a jury. Thus, the trial court must make factual determinations as well as rulings of law when it divides marital property. As one can see by looking at the dictates of section 503(c) of the Act, the division of marital property results from a decisional process where the trial court makes factual findings pursuant to the 10 factors it must consider. After considering these facts, the trial court must divide the property in "just proportions" without regard to marital misconduct.

A trial court's finding of fact will not be disturbed unless it is against the manifest weight of the evidence. Although the above sentence is not meant to be a revelation, it does point out that one possible standard of review of the trial court's disposition of marital property will be a manifest weight standard. If the trial court record indicates that the trial court's disposition of marital property was based upon factual

determinations that are clearly against the evidence presented, then the disposition should not stand under a manifest weight standard of review.

In a similar vein, it is a well-accepted principle that an appellate court has an unfettered review over pure questions of law. Thus, no matter what other standards of review are employed, when reviewing the disposition of marital property, the appellate courts may always review any factual findings upon which the ultimate decision rests under a manifest weight standard, and it may review, without any restraint, any pure questions of law.

To the extent Justice Trapp, in his special concurrence, is delineating the above analysis, I agree.

However, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and it has applied them to the correct legal standards, the trial court has "discretion" to divide marital property under section 503(c) of the Act. But, the majority opinion's mere incantation that the trial court's division of property will not be upset unless it "abused" its discretion is of little help in this area of the law. Nor is Marshall Auerbach's suggestion that section 503(c) of the Act allows the trial court to exercise "an enlightened discretion" of any help. Auerbach, *An Introduction to the New Illinois Marriage and Dissolution of Marriage Act*, 66 Ill. B.J. 132, 137 (1977).

To say a trial court abused its discretion without any elucidation is nothing more than saying it made an erroneous decision, or a judgment rendered in violation of the law. Or, when the reviewing court decides that the trial court has not abused its discretion, the meaning is that the ruling complained of was not erroneous and it will accordingly be sustained and cloaked under the term "judicial discretion." Bowers, Judicial Discretion of Trial Courts §11, at 307 (unpublished Nat'l College of State Trial Judges 1969).

"Judicial discretion" is an unfortunate appellation for a legal concept that means little more than that the trial court's actions are not clearly proscribed by the law in the sense that the trial court can make alternative decisions without offending the law. Although the term "judicial discretion" is entrenched in legal jargon, it always should be remembered that any discretion a judge may exercise properly must be legal. Indeed, judicial power, as distinguished from the power of the laws, has no existence. (*Discretio est discerne per legem quid sit justum.*) Bowers, Judicial Discretion of Trial Courts §10, at 306 (unpublished Nat'l College of State Trial Judges 1969).

Of course, a broadly defined abuse of discretion standard (*e.g.*, no abuse as long as reasonable men could differ) has its place in American jurisprudence. It is particularly well suited to reviewing decisions in areas of trial and administrative procedure. These are areas where the appellate

courts have no particular expertise and judicial economy favors little interference. Also, rarely will a trial court's ruling in these areas affect the individual's right to justice concerning the underlying cause, which is largely why an abuse of discretion standard is usually associated with questions of procedural—not substantive—law.

However, in *Hubbard v. Hubbard* (1904), 77 Vt. 73, 78, 58 A. 969, 970, the court stated:

> "Instances are not wanting, however, in the field of substantive law. Whether specific performance shall be decreed is said to be a matter of discretion, but the rules governing the exercise of the discretion have become so well fixed and understood that the conditions determining the right to a decree are almost capable of being stated in the form of a rule. [Citations.] We are not aware of any instance where the law has attempted to subject the right of a person to retain his estate to the decision of a magistrate unguided and unregulated save by his own sense of fairness and justice. The grant of discretionary power in the legal sense apparently implies the existence of certain well understood principles within which it should be exercised."

As the above quote points out, when the trial court has discretion in matters of substantive law, its "discretion" is bounded by "well-understood principles within which it should be exercised."

Another overlapping area where a broadly defined abuse of discretion standard is appropriate is where there is no special governing statute or rule.

The very word "discretion" implies the absence of restraint, which is exactly what the trial courts do not have a great deal of when they are dividing marital property pursuant to section 503(c) of the Act. This is not an area of wide discretion and obviously it is not a question of procedural law. Section 503(c) places explicit restraints upon the trial court's authority.

The Illinois Supreme Court, discussing section 503 of the Act in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576, 376 N.E.2d 1382, 1388, stated:

> "The primary legislative objective is to create a system of property division upon dissolution of marriage that is more equitable than that which previously existed in this State. It is evident that the legislature recognized glaring inequities in the earlier law and favored change. For instance, by giving both spouses an interest in 'marital property' upon dissolution of marriage, the legislature sought to award economic credit in the distribution of property for indirect or domestic contributions to the accumulation of property and sought to replace the concept of post-marital support through

alimony with one of post-marital stability through a just distribution of marital property and assets."

I conclude that an abuse of discretion standard of review which is undefined or which will not disturb the trial court's division of marital property as long as reasonable men could disagree as to the propriety of the action is not the appropriate standard of review in light of the purpose and objectives behind the Act. (See Ill. Rev. Stat. 1977, ch. 40, pars. 102, 503; *Kujawinski*, 71 Ill. 2d 563, 576, 376 N.E.2d 1382, 1388.) When it comes to the division of property, a court's power needs to be bounded by more than "arbitrary" and "capricious" conduct standards. To only bind the trial court's discretion by an undefined or a broadly defined abuse of discretion standard is not an appropriate protection for the division of what could be the product of years of hard work.

Kenneth Culp Davis, in his book on discretion, stated: "Discretionary power can be either too broad or too narrow. When it is too broad, justice may suffer from arbitrariness or inequality."

"In today's American legal system, the special need is to eliminate unnecessary discretionary power, and to discover more successful ways to confine, to structure, and to check necessary discretionary power." Kenneth Culp Davis, Discretionary Justice (1969).

Looking to section 503(c) we note that marital property must be divided in "just proportions" without regard to marital misconduct. We also note that this decision must be arrived at after consideration of all relevant factors, 10 of them proscribed by law. Marital property is all property acquired by either spouse subsequent to the marriage except for the few limited exceptions listed in section 503(a) of the Act. In the words of the Illinois Supreme Court, the legislature, by giving both spouses an interest in marital property upon dissolution of marriage, sought "to award economic credit in the distribution of property for indirect or domestic contributions to the accumulation of property and sought to replace the concept of post-marital support through alimony with one of post-marital stability through a just distribution of marital property and assets." *Kujawinski*, 71 Ill. 2d 563, 576, 376 N.E.2d 1382, 1388.

The starting point for any "just" division of property acquired during marriage should be an equal split. This equal starting point is needed in order to ensure that the purpose of the Act, specifically section 503(c), is carried out. Of course, after considering the 10 enumerated factors, the trial court upon the basis of compelling evidence may decide to redistribute the property in some other ratio in order to achieve a just result.

The only source of the trial court's power for dividing the parties' marital property is section 503(c) of the Act. We have no inherent power to deal with other people's property. Therefore, for purposes of review, I

would find that the trial court was in error if it did not properly comply with the statutory standards of section 503(c). It must divide the marital property in just proportions without regard to marital misconduct after considering all relevant factors, including the 10 factors enumerated in section 503(c). Of course, the trial court must articulate its legal reasoning behind its division of property in order for us to review its decision in light of the mandates of section 503(c) of the Act.

As indicated, the starting point for a "just" division of property acquired during marriage should be an equal split. Because the evidence received by the trial court does not justify a deviation from an equal division of marital property, I would reverse and remand the trial court's division of marital property.